**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **David Lee Adkins,** | Civil Case No. 3:05CV02978 |
| Petitioner, | |
| vs. | |
| **Khelleh Konteh, Warden,** | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| Respondent. | |

This matter is before the undersigned Magistrate pursuant to Local Rule 72.2(b)(2). The Petition for a Writ of Habeas Corpus, challenging the denial of Petitioner's right to compulsory process for obtaining favorable witnesses and right to effective assistance of counsel guaranteed by the Sixth Amendment, was filed pursuant to 28 U.S.C. § 2254 (Docket No. 1). Respondent filed a Return of Writ (Docket No. 17), and Petitioner filed a Traverse to Respondent's Return of Writ (Docket No. 31). Also pending before the Court are Petitioner's Motion to Stay the Application of Petition for Writ of Habeas Corpus (Docket No. 3), a Motion for Waiver of the Exhaustion of State Remedies Rule (Docket No. 4) and two Motions to Expand the Record (Dockets No. 14, 15). For the following reasons, the Magistrate orders that the Motion to Stay and the Motion to Waive Exhaustion of State Remedies Rule be denied and the Motions to Expand the Record be granted. The Magistrate recommends that the Writ be denied.

## **FACTUAL BACKGROUND**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct." *Keith v. Mitchell*, 455 F.3d 662, 666 (6th Cir. 2006) (*citing* 28 U.S.C. § 2254(e)(1) (2000)). Petitioner does not contest the following factual findings made by the Court of Appeals for the Sixth Judicial District:

On December 22, 2001, several minutes before 8:00 p.m., Sharon Laraby, a Buckeye Carryout employee, was robbed by two men. One man wore a mask that looked like a baseball and the second man, whom Laraby described as African-American, did not wear a mask. The masked man had a handgun, which he put in his waistband and came towards her demanding money. While Laraby was emptying the cash drawer, the masked robber grabbed the drawer from her hand and pulled out the money while the African-American robber grabbed money from her hand. Laraby testified that the robbers took approximately $ 900 from her that night. As the robbers exited the store, Laraby told another employee to call 911 and then exited the store herself. Outside of the store, Laraby saw a small red car in the middle of Ontario Street with the passenger's side door open and a white man getting into the car. She admitted that she never saw the face of the man she saw getting into the red car and she could not identify Petitioner as the man she saw getting into the red car.

On December 27, 2001, Dennis McVicker, Jr., was working at the Stop & Go Carryout on Arlington in Toledo, Lucas County, Ohio. Shortly after 4:00 p.m., two men entered the store with pantyhose over their faces and proceeded to rob the store. As McVicker reached for his cell phone, the African-American robber said "He has a gun," referring to his co-robber. The co-robber directed the African-American robber to get the money. The African-American man then removed the pantyhose from his head, reached into the register drawer and removed money. The robbers exited the store and ran to a red Ford Probe that was approximately one block away. McVicker ran out of the store after the robbers and got part of the car's license plate number. McVicker described the African-American robber as shorter and heavier than the light-skinned robber and stated that the light-skinned man was clearly directing the robbery.

On December 27, 2001, between 4:30 and 5:00 p.m., Jessica Burkett drove to the Stop & Go Carryout on Arlington. She observed two men standing by the front door pull masks over their faces and enter the store. She got back in her car. As she was driving away, she saw the same two men run out of the carryout and toward a red Ford Probe when they entered and fled. Burkett followed the Probe, obtained a full license plate number from it and relayed that information to the police. Burkett positively identified the car as the one involved in the robbery. She noted that the license plate was different from the one on the car she saw leaving the scene of the Stop & Go.

Randy Neubert, a customer of the Stop & Go when it was robbed on December 27, 2001 testified that as he began to leave the Stop & Go, two men entered the store with nylons covering their faces. Neubert observed

the African-American robber approach the counter and remove his mask while the other man, whom he described as white, directed the African-American man to get the money. Neubert also testified that the white man placed his hand on the handle of what appeared to be a gun tucked into his waistband and said "Don't make me do it." The African-American robber then took the money out of the cash register and the two men fled the store. Neubert ran out of the store and saw the two robbers get into a red Ford Probe. A third person was driving the Probe because the white man got into the passenger's seat and the African-American man got into the back seat.

Kelly Boerst testified that on December 27, 2001, she was the owner of a red Ford Probe when she noticed that the rear license plate was missing. She stated that she first noticed it when she was home on her lunch hour but later that day she was notified that there were a number of police officers at her home. Because it had snowed and the car had not been moved in two days, however, it was clear that the car was not involved in the robbery but that its plate was simply missing.

Sergeant Greg Smith testified that on December 22, 2001, he responded to a call regarding the robbery of the Buckeye Carryout. Smith obtained descriptions of the suspects from the witnesses and initiated an investigation. In the meantime, two suspects had been apprehended in connection with the robbery of the Stop & Go on December 27. The suspect, George Hughes, was identified as the same man who robbed that carryout. Hughes admitted that he had been involved in the Buckeye Carryout robbery. He further implicated Jerome Renzhofer and Petitioner as the person with the gun. Renzhofer was subsequently arrested and corroborated Hughes' story.

During a taped interview which was played to the jury, Petitioner was questioned as to one robbery; however, he referred to "robberies" several times and he made several inconsistent statements regarding his whereabouts on December 27, 2001. He asserted that Steve Smith a/k/a/ Hawkins, his wife's brother, was the third robber and that Steve was setting him up. After Petitioner, Hughes, and Renzhofer were arrested on December 28, 2001, they were connected and charged with two robberies.

At the trial below, George Hughes and Jerome Renzhofer also testified. Hughes stated that he has known appellant for approximately five months and that he started smoking crack cocaine with appellant several weeks before the robberies. With regard to the Buckeye Carryout robbery, Hughes testified that earlier in the day, appellant made the decision that he and Hughes would rob the store and that Renzhofer would drive appellant's red Ford Probe. Hughes also stated that appellant carried a gun. As they entered the carryout, appellant, who was wearing a large round mask, held the gun while Hughes, who was not masked, grabbed the money out of the cash register. They then exited the store and ran out to appellant's red Ford Probe. The threesome then drove into Michigan where appellant disposed of the mask and the license plate that had been on his car. Hughes testified that appellant then put his own license plate back on the car and they drove to appellant's home in Swanton. Hughes testified that he believed they got $ 400 from the Buckeye Carryout robbery, which they split three ways.

Hughes then testified regarding the December 27 robbery of the Stop & Go. He stated that on that afternoon, he, Renzhofer and realized that they were low on gas and had no money for gas or crack cocaine. They then passed the Stop & Go, after which appellant indicated that was the store they would rob. Earlier in the day, the trio had stolen women's nylon stockings from a Dollar Store and had removed the license plate from a red Ford Probe that they had found in a driveway in Maumee. They then pulled the car over near the Stop & Go and appellant and Hughes exited the car while Renzhofer remained in the back seat. As appellant and Hughes approached the store on foot, they pulled the nylon stockings over their heads to cover their faces. They then entered the store with appellant carrying his gun. Hughes testified that appellant warned the customers not to move while Hughes grabbed the money out of the cash register. The men then exited the store and ran to appellant's red Ford Probe which appellant drove from the scene. The group then drove to Carol Menifee's house where they

3

divided the money, which Hughes stated was approximately $ 150.  Hughes testified that Menifee is a friend of theirs and that they frequently would go to her home to smoke crack cocaine.  On cross-examination, Hughes admitted that he was testifying in exchange for a reduction in the charges brought against him.  He further denied ever telling a Dennis Duhart or a Lee Fox, while he was in jail pending trial on the robbery charges, that the police had the wrong man and that appellant was not involved in the robberies.

Jerome Renzhofer's testimony was similar to that of Hughes regarding the circumstances surrounding the robberies.  Renzhofer stated that he had known Hughes for approximately one year, that he sold crack cocaine to Hughes and that he frequently smoked crack cocaine with Hughes and appellant. Renzhofer further stated that both of the robberies were appellant's idea, that they put stolen license plates on the rear of appellant's red Ford Probe prior to both

Detective Daniel Navarre testified regarding his investigation of the Stop & Go robbery.  Based on information he had received from a Crime Stopper telephone call, Navarre investigated a red Ford Probe parked in a driveway on Laurel Street.  While talking to Carol Menifee, Navarre learned that the car belonged to appellant. Shortly thereafter, and while Navarre was still at Menifee's house, appellant arrived to pick up his car. He was then taken into custody.  While Navarre was interviewing appellant, another Crime Stopper call came in which identified the location of the two other suspects in the robberies, Hughes and Renzhofer.  Those two suspects were arrested and brought in for questioning. Navarre testified that upon his arrest, appellant had the keys to the red Ford Probe.  Upon searching the car, Navarre found a bag from the Family Dollar Store, a new pair of women's nylon stockings that had been cut, a pair of scissors and a pair of gloves.  Navarre also testified regarding his interview of appellant.  That interview was recorded by videotape and was played for the jury.  Afterward, Navarre pointed out that although he only questioned appellant as to one robbery, appellant referred to "robberies" several times.  In the interview, appellant is heard to make several inconsistent statements regarding his whereabouts on December 27, 2001, the day before the interview. He also asserts that Steve Smith a/k/a Hawkins, his wife's brother, was the third robber and that Steve was setting him up.  After appellant, Hughes and Renzhofer were arrested on December 28, 2001, Navarre spoke with Sergeant Smith and connected the two robberies. Thereafter, all three suspects were charged with both robberies.

In his defense at the trial below, appellant attempted to establish an alibi for his whereabouts on December 22 and 27, 2001. To that end, he called George Evans, an acquaintance of appellant, Theresa Adkins, appellant's wife, Denise Jiminez, an acquaintance of appellant, Debbie Hawkins, appellant's sister, Rick Frederick, Debbie Hawkins' fiance, and Wesley Fox, an acquaintance of George Hughes.  With regard to December 22, George Evans testified that he saw appellant at Steve Hawkins' house between 4:45 and 5:00 p.m. Hawkins is Theresa Adkins' brother.  Evans stated that when he arrived, appellant and Hawkins were drinking beer in the backyard.  Evans stayed at Hawkins' home for a couple of hours drinking along with appellant and Hawkins.  Evans testified that during that time, at approximately 6:00 p.m., George Hughes and Jerome Renzhofer showed up, had a conversation with appellant and then left after appellant gave them the key to his car.  Thereafter, around 7:00 p.m., appellant's wife Theresa arrived.  Theresa confirmed this arrival time.  She also testified that she remembered the day because she and her brother always go out on the Saturday before Christmas.  Evans, Hawkins, Theresa and appellant then went to The Distillery for dinner.  The group stayed there until approximately 9:00 p.m., after which they went to Jerry & Ben's, a bar.  Theresa testified that she was the designated driver for the evening and that she only drank one beer.  The others, however, did drink throughout the evening.  The group stayed at Jerry & Ben's until it closed, after which they dropped Evans off at his house.  Appellant and Theresa then spent the night at Hawkins' house.

Regarding the events of December 27, 2001, Theresa testified that she remembered the date because that was the day that she returned Christmas presents.  She stated that appellant called her from Carol Menifee's house at around 5:30 p.m. and asked her to pick him up because his car needed brake fluid and he had too much to drink.

4

Theresa then picked up appellant at approximately 6:15 p.m. and took him home. Rick Frederick, appellant's sister Debbie Hawkins' fiancé, testified that on December 27, 2001, he went to Steve Hawkins' house to pick up his post hole diggers and saw appellant there. He stated that he arrived at approximately 4:45 p.m. and left at around 5:30 p.m. and that appellant was there the entire time.

At the conclusion of the evidence, Petitioner proffered the testimony of Dennis Duhart that George Hughes admitted, when in the Lucas County Jail, that Petitioner was not involved in the robbery and that he was testifying against Petitioner to obtain a plea bargain.

*State of Ohio v. David Adkins,* Court of Appeals No. L -02-1190, 2003 Ohio 7230, 2003 Ohio App. LEXIS 6531 (December 31, 2003); *Adkins v. Konteh*, Case No. 3:05 CV 2978, Docket No. 17, Exhibit 1.

## PROCEDURAL BACKGROUND

On January 7, 2002, Petitioner, Jerome Renzhofer and George Hughes were indicted and charged with the aggravated robberies of the Buckeye and Stop & Go Carryouts on December 22 and 27, 2001, respectively. Both counts of the indictment, made pursuant to OHIO REV. CODE § 2911.01, included firearm specifications under OHIO REV. CODE § 2941.145. Prior to trial, Petitioner, through his appointed counsel, attorney Susan Sharkey, filed a motion to admit the hearsay testimony of Dennis Duhart, an unavailable witness (Docket No. 17, Exhibits 1 & 2; Docket No. 37, Exhibit O). The trial court heard arguments on the outstanding motions and denied Petitioner's motion to admit the hearsay testimony of Duhart (Docket No. 17, Exhibits 1 & 2). Petitioner then moved for a continuance until the State of Ohio could extradite Duhart from Mississippi (Docket No. 17, Exhibits 1 & 2). The court denied the continuance and the motion to admit hearsay testimony and trial proceeded (Docket No. 17, Exhibits 1 & 2).

On May 24, 2002, Petitioner was convicted of counts one and two for aggravated robbery. Petitioner was ordered to serve a seven year consecutive term for each of the two counts. He was also sentenced to serve an additional term of three years on each firearm count and the sentence was to be served prior to serving the sentence imposed for counts one and two (Docket No. 17, Exhibit 3).

Petitioner filed an appeal with the Court of Appeals for the Sixth Appellate District[1] (Docket No. 17, Exhibits 1 & 7). Petitioner filed a Motion to Vacate or Set Aside Judgment, several Amendments to the Motion to Vacate and a Motion for Summary Judgment (Docket No. 17, Exhibits 12, 15, 16 & 17). The Court of Appeals affirmed the conviction and remanded the case for re-sentencing[2]. Petitioner did not file a notice of appeal in the Ohio Supreme Court (Docket No. 1, ¶s 9(e) & 11(d)).

Petitioner was re-sentenced on February 5, 2004 to serve a term of seven years as to count one preceded by serving a mandatory and consecutive term of three years. The seven-year sentences for counts one and two were to be served consecutively, and the sentences as to the firearm specifications were to be served concurrently to one another but consecutive to sentences imposed for counts one and two for a total term of seventeen years (Docket No. 17, Exhibit 8). Petitioner filed a Motion for Preparation of Complete Transcript on April 16, 2004 (Docket No. 17, Exhibit 28). The motion was denied on May 13, 2004 (Docket No. 17, Exhibit 29). Petitioner filed a notice of appeal on May 26, 2004 (Docket No. 17, Exhibit 30). On December 30, 2004 the trial court denied Petitioner's claim for post conviction relief (Docket No. 17, Exhibit 21).

Petitioner filed a notice to appeal the trial court's denial of his claim for post conviction relief on

---

[1] On direct appeal, Petitioner asserted three assignments of error:
(1) the trial court erred in not granting objections to the statements by the state's witness that he and his family had been threatened by Petitioner;
(2) the trial court erred in not granting a continuance to permit the return of Petitioner's witness or to permit the testimony of Petitioner's witness by deposition; and
(3) the trial court erred in imposing consecutive sentences (Docket No. 17, Exhibit 7).

[2] The court of appeals specifically found that: (1) objections challenging the admission of evidence were not preserved for review and therefore waived; (2) the trial court did not abuse its discretion in denying Petitioner's motion for continuance; and (3) the case was remanded to the Lucas County Court of Common Pleas for re-sentencing (Docket No. 17, Exhibits 1 & 7).

February 1, 2005 (Docket No. 17, Exhibit 20). Petitioner filed a brief in support of his request for post conviction relief on February 28, 2005 (Docket No. 17, Exhibit 22). The Court of Appeals for the Sixth Appellate District confirmed the conviction on December 16, 2005 (Docket No. 17, Exhibit 21, 23).

Petitioner filed a notice of appeal in the Ohio Supreme Court on January 6, 2006[3] (Docket No. 17, Exhibit 25). The Ohio Supreme Court denied Petitioner's request for leave to appeal and dismissed the appeal as not involving an important constitutional question (Docket No. 17, Exhibit 27).

Petitioner filed a timely Writ of Habeas Corpus on December 27, 2005 (Docket No. 1). During the pendency of this case, Petitioner filed (1) a Motion to Stay the Application for Writ of Habeas Corpus, (2) Motion to Waive Exhaustion of State Remedies; (3) Motion to Expand the Record; and (4) Motion to Expend the Record Pursuant to Habeas Rule 7(b) (Docket Nos. 3, 4, 14, 15).

## **JURISDICTION**

A federal court has jurisdiction to consider a petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the grounds that he or she is in custody in violation of the Constitution or laws or treaties of the United States. *Leslie v. Randle*, 296 F.3d 518, 521 (6th Cir. 2002) (*citing* 28 U.S.C. § 2254 (2000)). It is a statutory requirement that a habeas corpus petitioner be "in custody" at the time the petition is filed. 28 U.S.C. § 2254(a) (2000).

Petitioner was convicted in the Lucas County Court of Common Pleas. He contends that he was confined at the Toledo Correctional Institution on December 27, 2005 when he filed his Petition for Writ of Habeas Corpus. Petitioner alleges that the trial court committed reversible error in denying his motion to admit hearsay evidence of an extradited witness which effectively denied him the right to compulsory

---

[3] Petitioner's five claims can be consolidated as follows: (1) the trial court violated the compulsory and due processes by allowing the prosecutor to make a key witness unavailable for trial and (2) trial counsel was ineffective (Docket No. 17, Exhibit 26).

process of favorable witnesses guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution. Petitioner also alleges that the trial court committed reversible error in appointing him ineffective counsel which, in effect, denied him the right to the assistance of counsel guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution.

Accordingly, this Court has jurisdiction to issue a writ pursuant to 28 U.S.C § 2241(a) & (c). Petitioner is physically confined, and the grounds raised are constitutional questions alleging violations of the United States Constitution.

## EVIDENTIARY HEARING

An evidentiary hearing is authorized in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings or when the state court proceedings are seriously defective or inadequately recorded. 28 U.S.C. § 2254(d) (2000). However, a district court may not hold an evidentiary hearing on a matter in which the state court has made findings unless one of the factors contained in Section 2254(d) applies. *Abdur'Rahman v. Bell*, 226 F.3d 696, 704 (6th Cir. 2000) *cert. denied*, 122 S. Ct. 386 (2001). A petitioner who has not developed the record of facts in state court is entitled to an evidentiary hearing only if he or she shows (1) "cause for his failure to develop the facts in state court proceedings and actual prejudice resulting from that failure" or (2) "that a fundamental miscarriage of justice would result from failure to hold a federal evidentiary hearing." *Id.* at 704-705. A district court abuses its discretion by ordering such a hearing without first requiring Petitioner to make the requisite showing. *Id.*

Respondent contends that this case can be decided from the record (Docket No. 17 at p. 28). Petitioner does not present persuasive evidence of prejudice by the state court's failure to develop the facts or of a fundamental miscarriage of justice resulting from a lack of a hearing. The factual basis for

8

Petitioner's claim has been developed adequately by the state court. Since Petitioner has not made the requisite showing that there is a need for an evidentiary hearing, the Magistrate finds that Petitioner's claim can be resolved by the pleadings and other evidence in the record and an evidentiary hearing is not required.

## EXHAUSTION OF STATE REMEDIES

The Sixth Circuit has held that a federal court can only grant a petition for a writ of habeas corpus if a petitioner has exhausted his or her state court remedies. *Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004) *cert. denied*, 120 S. Ct. 1316 (2005). An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears that: (A) the applicant has exhausted the remedies available in the courts of the state; or (B) (i) there is an absence of available state corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant. 28 U. S. C. § 2254(b) (1) (Thomson/West 2006).

An applicant shall not be deemed to have exhausted the remedies available in the courts of the state, within the meaning of this section, if he or she has the right under the law of the state to raise, by any available procedure, the question presented. *Clinkscale*, 375 F. 3d at 437 (*quoting* 28 U.S.C. § 2254(c)). The exhaustion remedy is satisfied when the highest court in the state in which Petitioner was convicted has been given a full and fair opportunity to rule on Petitioner's claims. *Manning, supra*, 912 F.2d at 881-883 (citations omitted). In Ohio, the exhaustion requirement is satisfied when Petitioner has exhausted direct and delayed appeals to the Ohio Court of Appeals and the Supreme Court. *Id.* at 881-882. A federal court is barred from hearing issues that could have been raised in state courts, but were not, and now may not be presented to state courts due to waiver or procedural defect. *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) (*citing Wainwright v. Sykes*, *supra,* at 2506).

9

In the present case, Petitioner admittedly did not appeal all of his decisions to the Supreme Court of Ohio after an appellate court had ruled against him. Specifically, he did not appeal the court's denial of his request to set aside the judgment of conviction or the order re-sentencing him (Docket No. 17, Exhibits 12, 15, 16 & 17; Docket No. 1, ¶s 9(e) & 11(d)). However, direct appeals need not be the only method of exhausting a petitioner's state remedies. Petitioner had raised valid constitutional claims pursuant to state procedure in his subsequent application for post-conviction relief. Petitioner claimed assignments of error including a denial of his right to compulsory process and a denial of his right to effective assistance of counsel.

Petitioner requested review of his post-conviction relief in an appeal to the Ohio Supreme Court, and the court declined to accept the appeal for review. The grounds for relief that were raised in his application for post-conviction relief are the same grounds that are raised here. Thus, the Supreme Court of Ohio had a full and fair opportunity to rule on Petitioner's claims. Petitioner raised his constitutional claims in his delayed appeal of post-conviction relief instead of his direct appeal to his conviction. Clearly, Petitioner has exhausted his state remedies.

## LAW & ANALYSIS

There are four pre-trial motions pending with this Court: A (1) Motion to Stay the Application for Writ of Habeas Corpus, (2) Motion to Waive Exhaustion of State Remedies; (3) and two Motions to Expand the Record. The Magistrate recommends the following dispositions.

*Motion for Stay (Docket No. 3)*

Petitioner requests that this Court grant him a stay until his claims, now pending in the Court of Appeals, have been exhausted.

A stay is an equitable remedy. *Nelson v. Campbell*, 124 S. Ct. 2117, 2126 (2004). Equity must

consider the state's strong interest in proceeding to judgment. *Id*. Thus, before granting a stay, a district court must consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim. *Id.* There is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay. *Id.*

The exhaustion requirement is satisfied when the highest court in the state in which Petitioner was convicted has been given a full and fair opportunity to rule on Petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881-883 (6th Cir. 1990) (citations omitted). In Ohio, the exhaustion requirement is satisfied when Petitioner has exhausted direct and delayed appeals to the Ohio Court of Appeals and the Supreme Court. *Id.* at 881-882. A federal court is barred from hearing issues that could have been raised in state courts, but were not, and now may not be presented to state courts due to waiver or procedural defect. *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) (*citing Wainwright v. Sykes*, 97 S. Ct. 2497, 2506 (1977)).

Petitioner's request for a stay pending disposition of his appeal is moot. At the time he filed the Motion, a claim for reconsideration was pending in the Court of Appeals for the Sixth Judicial District[4]. Subsequently, the Supreme Court of Ohio denied Petitioner's request for leave to file an appeal and the appeal was dismissed on April 26, 2006. The exhaustion requirements have clearly been satisfied.

Even if Petitioner failed to satisfy the exhaustion requirement, the Court of Appeals reinstated the appeal for purposes of correcting errors in Petitioner's "merit brief" (Docket No. 17, Exhibit 24). The

---

On February 1, 2005, Petitioner, *pro se*, filed a motion for reconsideration (Docket No. 17, Exhibit 24). The Court of Appeals reinstated his appeal and the clerk was ordered to consider the transcript of proceedings as part of the record on appeal. The Supreme Court of Ohio declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial constitutional question. The Court of Appeals granted Petitioner's motion to supplement the record with case law. The judgment of the Lucas County Court of Common Pleas was affirmed.

Court did not address the merits of Petitioner's conviction or his claim for habeas relief. The results of the appeal are neither relevant to the claims in the Writ nor will increase the likelihood of Petitioner's success on the merits of his Writ. Petitioner's Motion for Stay is therefore denied.

*Motion to Waive Exhaustion of State Remedies (Docket No. 4)*

In the alternative, Petitioner requests that the Court waive the "exhaustion of state remedies rule." The Magistrate has already determined that pursuant to 28 U. S. C. § 2254(b)(1), available state remedies must be exhausted before a federal court can hear the petition unless "circumstances exist that render such process ineffective to protect the rights of the applicant. Petitioner has exhausted all remedies available for post conviction relief. Additionally, he has offered no evidence that the appeal of his requests for post conviction relief have rendered the process of exhaustion ineffective. Therefore, the Motion to Waive Exhaustion of state remedies is denied as moot.

*Motions to Expand the Record (Dockets No. 14 & 15)*

Petitioner seeks leave, pursuant to Rule 7 of the RULES GOVERNING SECTION 2254 CASES, for an order allowing him to supplement the record with (1) letters "seeking to obtain the Petitioner's trial transcripts and informing Mr. Gamso of the affidavit the Petitioner received from a key material witness" (2) a transcript from the case of another person referred to in the original Petition for a Writ of Habeas Corpus.

The purpose of Rule 7 "is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing." 28 U.S.C. § 2254 (2000) (Rule 7, advisory committee notes). "The rule is meant to eliminate unnecessary hearings, not require the expansion of necessary ones." *Jamison v. Collins*, 291 F.3d 380, 387 (6th Cir. 2002). In effect, Rule 7 permits the record to be expanded to include additional material relevant to the merits of

12

the petition.  *Id.*  RULE 7 OF THE RULES GOVERNING SECTION 2254 states in relevant part:

> **(a) In General.**  If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition.  The judge may require that these materials be authenticated.
>
> **(b) Types of Materials.**  The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record.

In the present case, Petitioner is seeking to expand the record by including in it several letters written to counsel while his case was on direct appeal.  Such letters demonstrate that Petitioner exercised due diligence in his attempt to obtain his trial transcript.  His second motion to expand the record seeks to include copies of trial transcripts of another defendant, Jose Zuniga, to demonstrate evidence of the editing of trial transcripts.  Given the statutory purpose of eliminating the need for evidentiary hearings, the Magistrate finds it reasonable to include these documents in the record.  Petitioner contends that the letters written to appellate counsel are evidence that his appellate counsel was ineffective.  Moreover, the documents including Zuniga's transcripts relate to the current petition because they were referred to on page two of Petitioner's original federal habeas petition attachments.  Furthermore, the Magistrate is persuaded that the supplemental evidence will, in part, eliminate the need for an evidentiary hearing. Accordingly, Petitioner's Motions to Expand the Record are granted.

### *Application for Writ of Habeas Corpus (Docket No. 1)*

Petitioner's requests for relief are based on five (5) grounds.  Grounds one through three (1-3) relate to the trial court's denial of his motion for a continuance and for denying his motion to admit hearsay testimony because one of the defense witnesses was not available to testify.  Petitioner alleges that these adverse ruling constitute a denial of compulsory process guaranteed to him by the Sixth and Fourteenth Amendments of the United States Constitution.  Grounds four and five (4-5) relate to a claim

that Petitioner's court appointed trial attorney was constitutionally ineffective in that she did not "thoroughly examine documentary evidence" and did not compel the attendance of witnesses whose testimony was exculpatory.

### *Compulsory Process*

Petitioner also claims that the failure of the court to grant him leave to secure the attendance of witnesses with exculpatory testimony deprived him of the right to compulsory process. The Sixth Amendment to the United States Constitution guarantees compulsory process. "Whether rooted directly in the Due Process Clause of the [Fifth Amendment] or in the Compulsory Process or Confrontation Clause of the Sixth Amendment, the constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 126 S. Ct. 1727, 1732 (2006) (*quoting Crane v. Kentucky*, 106 S. Ct. 2142, 2146 (1986)).

However, under the AEDPA, a federal district court can only grant petitioner's application for writ of habeas corpus if the Ohio court's adjudication of the merits of petitioner's ground for relief: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 22 U.S.C. § 2254(d) (Thomson/West 2006).

A state court decision is contrary to Supreme Court principles when the state court applies a rule that contradicts the holdings set forth in a Supreme Court case or if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a conclusion different from the precedent. *Lockyer v. Adrade*, 123 S. Ct. 1166, 1173 (2003) (*citing Williams v. Taylor*, 120 S. Ct. 1495, 1519 (2000)). Clearly established federal law as determined by the

Supreme Court of the United States refers to the court's holdings, not dicta, as of the time of the relevant state court decision. *Williams*, 120 S. Ct. at 1523. A state court's application of a United States Supreme Court principle may be found "unreasonable" only if the state court's decision was "more than incorrect or erroneous"; it must have been "objectively unreasonable." *Wiggins v. Smith*, 123 S. Ct. 2527, 2535 (2003) (*citing Lockyer*, 123 S. Ct. at 1174; *Williams*, 120 S. Ct. at 1521).

Petitioner has failed to show a Supreme Court precedent that the compulsory process is violated when the trial court fails to admit the testimony of witnesses whose testimony is cumulative. The facts of this case make it clear that the testimony of Dennis Duhart was duplicative of the testimony of another defense witness[5]. The testimonial evidence of Dennis Duhart was neither arbitrarily excluded nor vital to Petitioner's defense. Therefore, the state court did not abuse its discretion in denying Petitioner's motion for a continuance or Petitioner's motion to admit hearsay testimony. Accordingly, Petitioner was not denied compulsory process or "a meaningful opportunity to present a complete defense."

### *Ineffective Assistance of Counsel*

Pursuant to claims four and five of his Application for Writ of Habeas Corpus, Petitioner alleges that he was denied effective assistance of trial counsel. In particular counsel failed to compel the attendance at trial of police officers Calzone and Haynes who responded to one of the robberies. Instead, Sergeant Smith was assigned the case and testified at trial. Petitioner asserts that the failure to compel Calzone and Haynes to testify deprived him of the opportunity to impeach the testimony of the eye-witness and victim.

The Sixth Amendment guarantees that in all criminal prosecutions, the accused shall enjoy the

---

[5] Petitioner claimed that Duhart would have testified that he heard co-defendant, George Hughes, say that Petitioner was innocent and that a man named Douglas Young, a.k.a. Biscuit had actually committed the robberies of which Petitioner was convicted.

right to the assistance of counsel for his or her defense. U.S. CONST. amend. VI. The right to counsel is the right to the effective assistance of counsel. *Smith v. Mitchell,* 348 F.3d 177, 199 (6th Cir. 2003) (*quoting McMann v. Richardson,* 90 S. Ct. 1441, 1449 n 14 (1970)). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Id.* (*citing Strickland v. Washington*, 104 S. Ct. 2052, 2062 (1984)). A reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 104 S. Ct. at 2065. Wide latitude is given counsel in making tactical decisions. *Strickland,* 104 S. Ct. at 2065.

A two-part test exists for evaluating ineffective assistance of counsel claims. *Id.* First, the defendant must demonstrate that counsel's performance was deficient in that counsel's errors were so serious that counsel was not functioning as constitutionally guaranteed. *Id.* (*citing Strickland* at 2062). Second, the defendant must establish that the inadequate assistance prejudiced the defense. *Id.* To establish prejudice, the defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

Petitioner's argument that he was prejudiced by the failure of counsel to compel the testimony of Officers Calzone and Hayes is purely speculative. The evidence suggests that Officers Calzone and Haynes responded to one of the robberies by completing a report. Sergeant Smith was the investigator and after obtaining the surveillance tapes proceeded to arrest the suspects, including Petitioner (Docket No. 37, Exhibit W). Counsel's decision to refrain from compelling Officers Calzone and Hayes to testify was not so ill-chosen that it permeated the entire trial with unfairness or prejudiced the defense. Petitioner has not demonstrated that his counsel acted unprofessionally and unreasonably. Additionally, Petitioner

16

has not shown that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. There is a strong presumption that a reasonable lawyer exercising reasonable professional judgment or strategy would have refrained from compelling the testimony of officers who merely made the report. Therefore, Petitioner's ineffective assistance of counsel claim is without merit.

## CONCLUSION

For these reasons, the Magistrate orders that Petitioner's Motion to Stay and the Motion to Waive Exhaustion of State Remedies Rule be denied and that the Motions to Expand the Record be granted. The Magistrate finds that Petitioner was not denied compulsory process, a meaningful opportunity to present a complete defense at his trial or the effective assistance of counsel. Consequently, the Magistrate recommends that Petitioner's Writ be denied, the referral to the Magistrate terminated and the case dismissed.

/s/ Vernelis K. Armstrong
United States Magistrate Judge

Dated: November 15, 2006

## NOTICE

Please take notice that as of this date the Magistrate's Report and Recommendation attached hereto has been filed.

Please be advised that, pursuant to Rule 72.3(b) of the Local Rules for this district, the parties have ten (10) days after being served in which to file objections to said Report and Recommendation. A party desiring to respond to an objection must do so within ten (10) days after the objection has been served.

Please be further advised that the Sixth Circuit Court of Appeals, in *United States v. Walters*, 638

F.2d 947 (6th Cir. 1981) held that failure to file a timely objection to a Magistrate's Report and Recommendation foreclosed appeal to the Court of Appeals. In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the Court of Appeals to condition the right of appeal on the filing of timely objections to a Report and Recommendation.